# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| KEVIN HOWARD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case number 4:07cv2075 TCM |
| | ) |
| JEFF NORMAN,[1] | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

Kevin Howard (Petitioner) petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from a Missouri conviction after a jury trial. See 28 U.S.C. § 2254. Finding the federal habeas petition presents two grounds for relief, and concluding that one ground is procedurally barred and the other ground is without merit, the petition will be denied without further proceedings. Petitioner has also filed a motion for appointment of counsel [Doc. 17], which will be denied as moot.

---

[1] Petitioner is incarcerated at the Southeast Correctional Center where the originally named Respondent, Troy Steele, was the Warden at the time this action was filed. Now, Jeff Norman, is the Warden at the Southeast Correctional Center. See http://doc.mo.gov/division/dai/warden/php (last visited Mar. 15, 2011). Therefore, the Court will substitute Jeff Norman for Troy Steele as the Respondent in this case.

Petitioner identified the then-Attorney General for the State of Missouri, Jeremiah W. (Jay) Nixon, in his federal habeas petition. (Pet. at 1 [Doc. 1].) Because Petitioner is not challenging a sentence he is going to serve in the future, the present Attorney General of Missouri, Chris Koster, will not be added as a Respondent. See Rule 2(b), Rules Governing Section 2254 in the United States District Court.

**Background**

Petitioner was charged with one count of first degree assault, in violation of Mo. Rev. Stat. § 565.050, for attempting to kill or cause serious physical harm to Michael E. Hamilton by shooting him in his side and in the back of his head with a handgun on November 10, 2003, and one count of armed criminal action, in violation of Mo. Rev. Stat. § 571.015, related to the assault offense. (Indictment, filed Dec. 3, 2003, Legal File, Resp't Ex. A, at 8-11 [all of Respondent's exhibits are part of Doc. 10].)

During voir dire, the prosecutor peremptorily struck three African-American Venirepersons, including Sandra Irons. (Trial Tr., Resp't Ex. B, at 134-35137-38.) Petitioner objected that the State's peremptory strikes eliminated all of the "African-American population of the jury" and were racially motivated. (Id. at 134-35.) After the prosecutor explained the basis for her strikes and Petitioner presented his position on those strikes, the trial court concluded the "strikes of the African-Americans on the panel . . . are race-neutral." (Id. at 141.)

During trial, the court denied Petitioner's motion to suppress after a hearing, and the State presented the testimony of Loraine Moton and Michael Hamilton, read a portion of Hamilton's medical records related to the injuries he sustained on November 10, 2003, and introduced photographs of the scene. (Id. at 163-278; 278-302.) Petitioner did not testify or present other evidence during the guilt phase of trial. (See id. at 303-04, 309.) The trial court refused an instruction on second-degree assault that was offered by Petitioner. (Instruction

No. A, Resp't Ex. A, at 34; Trial Tr., Resp't Ex. B, at 306-07.) The jury found Petitioner guilty of both charged offenses. (Verdict Forms, Legal File, Resp't Ex. A, at 36-37.)

During the second, or sentencing phase, of trial, Petitioner testified and the State presented Petitioner's statement to the police after the crimes. (Trial Tr., Resp't Ex. B, at 346-69.) During closing argument, the prosecutor characterized this crime as an "attempted murder." (Id. at 370.) The jury returned verdicts that terms of twenty years imprisonment for first degree assault and five years imprisonment for armed criminal action be imposed. (Id. at 376-77; Verdict Forms, Legal File, Resp't Ex. A, at 43-46.)

After denying Petitioner's motion for judgment of acquittal or, in the alternative, new trial ("motion for new trial"), the trial court sentenced Petitioner to concurrent terms of imprisonment of twenty years for first degree assault and five years for armed criminal action. (Sentence and Judgment, Legal File, Resp't Ex. A, at 51-53; Trial Tr., Resp't Ex. B, at 378-79.)

In his direct appeal, Petitioner pursued one point: that the trial court erred when it refused to instruct the jury on second degree assault as proposed by Petitioner. (Pet'r Br., Resp't Ex. C, at 10, 11.) The Missouri Court of Appeals for the Eastern District of Missouri, found no error and affirmed Petitioner's conviction in a summary per curiam order, dated October 25, 2005, explaining its decision in a memorandum sent only to the parties. (Mem. Supplementing Order Affirming J. Pursuant to Mo. S. Ct. Rule 30.25(b), Resp't Ex. E.) As an explanation for its affirmance, the Missouri Court of Appeals stated:

Loraine Moton had a party at her apartment on November 10, 2003. [Petitioner] and Moton were romantically involved at the time, and he was in her apartment. Michael Hamilton was also present. Everyone left the party except [Petitioner], Hamilton and a man named Chris. Hamilton was on the couch, and Moton and [Petitioner] were in her bedroom. Moton asked [Petitioner] to tell Hamilton to leave. [Petitioner] initially objected, but subsequently went into the living room to ask Hamilton to leave. Moton heard him asking Hamilton to go, and then she heard sounds of fighting. She heard a gunshot and decided to go into the living room. When she went into the living room, a second shot went off. She saw [Petitioner] standing over Hamilton with a gun in his hand. Hamilton was on the floor on his knees, with his hands covering his face. After the second shot, [Petitioner] ran out the door of the apartment. Hamilton had been drinking heavily and did not recall the incident. He testified he only remembered waking up with a burning sensation in his stomach. According to Hamilton, [Petitioner] then told him that he was going to put him out of his misery, and [Petitioner] shot Hamilton in the head.

[Petitioner] was charged with first degree assault and armed criminal action. At trial, counsel for [Petitioner] offered an instruction on the lesser-included offense of second-degree assault. This instruction was refused by the court. The jury found [Petitioner] guilty of both counts. [Petitioner] filed a motion for judgment of acquittal and alternative motion for new trial. The court sentenced [Petitioner] to concurrent terms of [twenty] years for the assault charge and [five] years for armed criminal action, deeming his post-trial motions denied. The present appeal followed.

In his sole point on appeal, [Petitioner] claims that the trial court erred in refusing to instruct the jury on the lesser-included offense of assault in the second degree. [Petitioner] argues there was evidence from which the jurors could reasonably have concluded that he engaged in an altercation with Hamilton and recklessly discharged the weapon during that altercation.

The trial court is only obligated to give a lesser-included offense instruction where the evidence supports both the acquittal of defendant of the greater offense, and the conviction of defendant of the lesser offense. State v. Hostetter, 126 S.W.3d 831, 835 (Mo. [Ct.] App. 2004) (citation omitted).

In the present case, [Petitioner] argues there was evidence to support an instruction on the lesser-included offense of assault in the second degree. "The mental state of the accused is the distinguishing factor between the two degrees

of assault," at issue here. State v. Hineman, 14 S.W.3d 924, 927 (Mo. banc 1999). Pursuant to section 565.050 RSMo (2000), first-degree assault requires a defendant to act knowingly. Under section 565.060, second-degree assault requires a defendant to act recklessly. Section 562.016 provides that a person acts knowingly when he is aware of the nature of his conduct, and a person acts recklessly when he consciously disregards a substantial risk, and this disregard is a gross deviation from the standard of care exercised by a reasonable person in the same situation.

[Petitioner] relies on Hineman to argue that the jury in the present case was not required to believe Hamilton's version of events, but that the jury could have believed Loraine Moton's account and concluded that [Petitioner] recklessly shot the gun during a fight. However, the court was presented with significantly different facts in Hineman. There, the defendant was charged with first-degree assault for breaking his infant son's leg. The court noted that there were various explanations presented as to how the injury occurred and determined this evidence supported an instruction on second-degree assault. 14 S.W.3d at 927.

In the present case, there were no varying explanations as to how Hamilton was shot. At trial, Loraine Moton testified that she asked [Petitioner] to tell Hamilton to leave her apartment. [Petitioner] went into the living room to ask Hamilton to leave. Moton stated she heard him asking Hamilton to go, and then she heard sounds of fighting. When Moton heard a gunshot, she went into the living room and saw [Petitioner] standing over Hamilton with a gun in his hand. Hamilton was on the floor on his knees, with his hands covering his face. A second shot went off, and [Petitioner] ran out the door of the apartment. Hamilton also testified at trial. He said he had been drinking heavily and did not recall the incident. However, he testified he woke up with a burning sensation in his stomach. [Petitioner] told him that he was going to put him out of his misery. [Petitioner] subsequently shot Hamilton in the head.

There was insufficient evidence to support a submission of the lesser-included offense of second-degree assault. No evidence was presented to support the claim that [Petitioner] acted recklessly. [Petitioner] argues that from Moton's testimony that she heard fighting, the jury could have reasonably inferred that during an argument or fight, [Petitioner]'s gun went off. However, there was no evidence presented to support this supposition. Additionally, there was no basis in the record for the jury to find or infer that [Petitioner] did not act knowingly in causing injury to Hamilton by shooting him. Both

witnesses testified to intentional, knowing acts by [Petitioner]. Moton saw [Petitioner] standing over Hamilton holding a gun in his hand, and she then heard a gunshot. Hamilton testified that [Petitioner] told him he was going to put him out of his misery, and then [Petitioner] shot Hamilton in the head. A reasonable juror could not draw the inference that [Petitioner] acted recklessly from this evidence. Therefore, the court did not err in refusing to submit the lesser-included offense of second-degree assault to the jury. Point denied.

The judgment of the trial court is affirmed.

(Mem. Supplementing Order Affirming J. Pursuant to Mo. S. Ct. Rule 30.25(b), Resp't Ex. E, at 2-5 (footnotes omitted).)

The Missouri Court of Appeals issued its mandate on November 16, 2005. (Mandate, Resp't Ex. F.) Petitioner did not seek transfer to the Missouri Supreme Court. (See, e.g., page 5 of the Docket Sheet for **State v. Howard**, No. ED85164, https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Mar. 15, 2011).)

Petitioner then filed a timely pro se postconviction motion. (Pet'r Postconviction Mot., Mot. Legal File, Resp't Ex. G, at 3-11.) Through counsel, Petitioner subsequently filed an amended postconviction motion, including a request for an evidentiary hearing.[2] (Pet'r Am.

---

[2] Upon the filing of the timely amended postconviction motion, any claims in the initial pro se motion for postconviction relief were no longer before the motion court except to the extent they were included in the amended motion. See **Tinsley v. State**, 258 S.W.3d 920, 927 (Mo. Ct. App. 2008) ("the only claim which the motion court could have considered and determined was that raised in the amended Rule 29.15 motion for post-conviction relief [because t]he filing of an amended motion superseded [the initial] motion and rendered it a nullity" (citations omitted)); **Day v. State**, 143 S.W.3d 690, 693-94 (Mo. Ct. App. 2004) ("The amended motion supersedes [the initial] motion and renders it a nullity. . . . . Therefore, the allegations of a timely-filed amended motion would be the only matters before the motion court" (citation omitted)); **Leach v. State**, 14 S.W.3d 668, 670-71 (Mo. Ct. App. 2000) (an allegation not included in the amended motion for postconviction relief is "not properly before the motion court").

Postconviction Mot., Mot. Legal File, Resp't Ex. G, at 17-32.) In his amended postconviction motion, Petitioner asserted two claims: a claim that his trial attorney provided ineffective assistance in failing to object to, and request a mistrial for, the prosecutor's characterization of the assault as an "attempted murder" in closing argument; and a claim that his attorney on direct appeal provided ineffective assistance in failing to raise a sufficiency of the evidence challenge on the ground that the testimony of Loraine Moton, the state's key witness, was so unreliable and inherently contradictory that Petitioner's conviction violated due process under the Fifth and Fourteenth Amendments. (Id. at 19-20 and 26.)

The motion court denied Petitioner's request for an evidentiary hearing and subsequently denied Petitioner's postconviction motion. (Order, Mot. Legal File, Resp't Ex. G, at 33; Findings of Fact, Conclusions of Law, Order, Judgment and Decree ("Judgment"), Mot. Legal File, Resp't Ex. G at 34-41.)

Petitioner presented two points in his postconviction appeal. (Pet'r Br., Resp't Ex. H, at 14-15, 17, 27.) In his first point, Petitioner argued that the motion court clearly erred, and denied Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to due process, to present a defense, to a fair trial, and to the effective assistance of counsel, when that court denied Petitioner's postconviction motion without an evidentiary hearing in that trial counsel was ineffective for failing to object to the prosecutor's improper characterization of the crime as an attempted murder. (Id. at 14, 17.) For his second point, Petitioner urged the motion court clearly erred, and violated his Fifth, Sixth, and Fourteenth Amendment rights to due process,

present a defense, a fair trial, and the effective assistance of counsel, when that court denied

Petitioner's postconviction motion without a hearing in that his counsel on direct appeal was

ineffective in failing to raise a sufficiency of the evidence argument.  (Id. at 15, 27.)

The Missouri Court of Appeals for the Eastern District of Missouri found no error and

affirmed the denial of Petitioner's postconviction motion in a summary per curiam order,

dated June 19, 2007.  (Order and Mem. Supplementing Order Affirming J. Pursuant to Mo.

S. Ct. Rule 84.16(b), Resp't Ex. J.)  The appellate court stated in full:

> [Petitioner] appeals the judgment denying his motion for post-conviction relief under Rule 29.15.  In his first point on appeal, [Petitioner] argues that the motion court clearly erred in not finding his trial counsel ineffective for failing to object when the prosecutor characterized his crime of assault in the first degree as attempted murder during arguments at the penalty phase of trial after the jury reached a guilty verdict. [Petitioner] argues in his second point that the motion court clearly erred in not finding his appellate counsel ineffective for failing to raise a sufficiency of the evidence argument on appeal based on an application of the destructive contradictions rule.

> We have reviewed the briefs of the parties and find that the motion court did not clearly err in denying [Petitioner]'s motion.  There was no legal basis for an objection to the prosecutor's statement because proving [Petitioner] attempted to kill the victim is an element of the crime of assault in the first degree.  See section 565.050 RSMo 2000.  Moreover, [Petitioner] cannot demonstrate that the jury may have found him innocent had his counsel objected since the prosecutor did not make the statement until after the jury reached its [guilty] verdict.  See Barnett v. State, 103 S.W.3d 765, 768-69 (Mo. banc 2003) (stating that to be entitled to relief, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the trial would have been different).

> As to [Petitioner]'s second point, the motion court did not clearly err in finding that the testimony of Loraine Moton was consistent, precluding the application of the destructive contradictions rule.  See . . . Beckett, 858 S.W.2d [at] 857 . . .(stating that the doctrine only applies where a witness's inconsistent

and contradictory statements at trial are so diametrically opposed to one another as to preclude reliance thereon and rob the testimony of all probative force).

> An extended opinion would have no precedential value.  The judgment of the [motion] court is affirmed under [Mo. S. Ct.] Rule 84.16(b).

(Order, dated June 19, 2007, Resp't Ex. J (footnote omitted)).  The state appellate court issued its mandate for the postconviction appeal on July 23, 2007.  (Mandate, Resp't Ex. K.)

Petitioner then filed his timely federal habeas petition in which he asserts two grounds for relief.  For his first ground, Petitioner argues that his rights to due process, the effective assistance of counsel, a fair trial, present a defense, compulsory process, and freedom from cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated when his attorney on direct appeal failed to raise on appeal a challenge to the sufficiency of the evidence.  (Pet. at 5 [Doc. 1].)  For his second ground for relief, Petitioner argues the prosecutor's characterization of the crime as a

> failed murder . . . was racist, biased, and colored the all white jury in a way that precluded a fair and impartial rendering from the historically racist St. Louis County jury.  After the last available African American venire member, Sandra Irons[,] was denied equal protection of the law when the prosecutor was permitted to strike Ms. Irons for pretextual reasons in violation of Ba[ts]on v. Kentucky, 476 U.S. 79 (1986), [t]he embolden[ed] prosecutor made [a] mockery of the constitutional right[]s of [Petitioner] and sketched a portrait of [a] wild, racist, hate[-]mongering murder that swayed a white jury to convict.

(Id. at 7 (emphasis in original).)

Respondent argues that neither ground should be considered because ground one presents a claim that is not cognizable in a federal habeas proceeding and neither part of ground two was raised on direct appeal.  Respondent also urges that both grounds lack merit.

The Court will address Respondent's procedural arguments first.

## Discussion

Procedural Bar.  As to Petitioner's first ground for relief that his direct appeal counsel was ineffective in failing to raise a sufficiency of the evidence claim on direct appeal, Respondent contends it is not cognizable because Petitioner is asking the Court to re-examine the Missouri Court of Appeals' application of the destructive-contradictions rule, a state law doctrine, see **State v. Case**, 140 S.W.3d 80, 91-92 (Mo. Ct. App. 2004), and federal habeas courts do not re-examine the application of state law rules, citing **Estelle v. McGuire**, 502 U.S. 62, 68 (1991); **Schleeper v. Groose**, 36 F.3d 735, 737 (8th Cir. 1994).

When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  **Estelle v. McGuire**, 502 U.S. at 68; accord **Middleton v. Roper**, 455 F.3d 838, 852 (8th Cir. 2006). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  **Estelle**, 502 U.S. at 67-68; **Brown v. Luebbers**, 371 F.3d 458, 466 (8th Cir. 2004) (en banc).  Missouri law provides that

> [u]nder the doctrine of destructive testimony or destructive contradictions, a witness's trial testimony that is marred by "rampant inconsistencies and contradictions" is not probative evidence.  State v. Goudeau, 85 S.W.3d 126, 131-32 (Mo. [Ct.] App. 2002).  Accord State v. Davison, 46 S.W.3d 68, 79 (Mo. [Ct.] App. 2001).  The doctrine is not a corroboration rule; it does not apply "when the inconsistencies are (1) between at-trial testimony and pre-trial statements, or (2) between the testimony of one witness and another witness at trial."  Goudeau, 85 S.W.3d at 131-32.

**Case**, 140 S.W.3d at 92; accord **State v. Uptegrove**, No. WD 72356, 2011 WL 134037, * 3-5

(Mo. Ct. App. Jan. 18, 2011); **State v. Moore**, 194 S.W.3d 387, 390-91 (Mo. Ct. App. 2006); **State v. Johnson**, 182 S.W.3d 667, 672 (Mo. Ct. App. 2005).

Respondent contends that, in ground one, Petitioner is challenging the state court's application of the state law doctrine known as the destructive-contradictions rule, a state law challenge that is not cognizable in a federal habeas proceeding. The Missouri Court of Appeals, however, only addressed the doctrine of destructive contradictions in its discussion of Petitioner's ineffective assistance of appellate counsel claim in his postconviction appeal; that doctrine was not raised as trial court error in Petitioner's direct appeal, which challenged only the trial court's failure to give a second-degree assault instruction. (Resp'ts Exs. E and J.) Here, Petitioner is pursuing an ineffective assistance of appellate counsel claim, which is a proper claim for federal habeas review, and not simply a claim that the state court improperly or properly applied the destructive contradictions doctrine as a matter of state law. Therefore, Respondent's argument that ground one is not cognizable in this proceeding lacks merit. The Court will consider the merits of Petitioner's first ground for relief, although this Court will not re-examine the state courts' interpretation of the destructive contradictions doctrine when resolving Petitioner's claim that his attorney on direct appeal provided ineffective assistance in failing to present a challenge to the sufficiency of the evidence.

Respondent also argues that neither part of Petitioner's second ground for relief was raised on direct appeal and so that ground is barred from federal habeas review. In his second ground, Petitioner urges the prosecutor improperly characterized the crime as an attempted

murder and the prosecutor violated <u>Batson</u> by striking venireperson Irons on race-based grounds. Petitioner did not expressly present this ground for relief as an ineffective assistance of counsel claim arising out of those alleged errors by the prosecutor and, therefore, the Court will construe the ground for relief as presenting trial court errors in allowing the prosecutor's strike of the venireperson and the prosecutor's reference to an attempted murder.

It is well established that "[t]o be eligible for federal habeas corpus relief, a state prisoner must first exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court." **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal quotation marks omitted) (quoting <u>Middleton</u>, 455 F.3d at 855); <u>see also</u> **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). This requires that the factual and legal bases for the federal habeas claim be presented to the state courts before the federal habeas court may consider the merits of the claim.[3] **King v. Kemna**, 266 F.3d 816, 821 (8th Cir. 2001) (quoting <u>Flieger v. Delo</u>, 16 F.3d 878, 885 (8th Cir. 1994)), for the proposition that, to preserve a claim for federal review, a habeas petitioner must raise both the factual and legal bases for the claim in the state courts, and <u>sua sponte</u> finding a habeas claim procedurally barred because the basis for it had not been presented to the state courts). "'If a petitioner has

---

[3] While the Court will consider Petitioner's first ground as a claim that his direct appeal attorney provided ineffective assistance by failing to raise on appeal a challenge to the sufficiency of the evidence, the Court will not consider as part of that ground Petitioner's claims that the direct appeal attorney's omission violated Petitioner's federal constitutional rights to compulsory process and to be free from cruel and unusual punishment. Petitioner has not presented those claims to the state courts and so they are defaulted.

not presented his habeas corpus claim to the state court, the claim is generally defaulted.'" **Carney**, 487 F.3d at 1096 (quoting Barrett v. Acevedo, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc)); accord **Malone v. Vasquez**, 138 F.3d 711, 716 (8th Cir. 1998). "Claims that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted." **Skillicorn v. Luebbers**, 475 F.3d 965, 976 (8th Cir. 2007).

In Missouri, alleged trial court errors, including constitutional claims of trial court error, must be raised on direct appeal. See, e.g., **Middleton v. State**, 103 S.W.3d 726, 740 (Mo. 2003) (en banc) (alleged trial court error in admitting letter "constitutes a claim of trial error in the admission of [a] document [that] must be raised on direct appeal and [is] not cognizable in a post-conviction motion"); **Griffin v. State**, 794 S.W.2d 659, 661 (Mo. 1990) (en banc) (alleged trial court error in allowing certain statements of prosecutor during closing argument is an "issue[] that w[as] before the trial court in the course of [the] criminal trial. They are allegations of trial errors which are for review by direct appeal"); **Phillips v. State**, 214 S.W.3d 361, 364 (Mo. Ct. App. 2007) (finding merit in State's argument that a postconviction claim that the trial court erred in failing to allow the defendant to represent himself at trial should have been raised on direct appeal because it was alleged trial court error known to the defendant and was not cognizable in a postconviction proceeding). Therefore, if trial court errors are not raised on direct appeal, they are defaulted.

Petitioner's only claim on direct appeal focused on the trial court's alleged error in failing to instruct the jury on the lesser-included offense of second-degree assault. Petitioner

presented no point on direct appeal that challenged the prosecutor's strike of Irons as a <u>Batson</u> violation or that challenged any attempted murder statement made by the prosecutor during a closing argument. Each part of the second ground for relief is defaulted.[4]

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Skillicorn**, 475 F.3d at 976-77; <u>see</u> <u>also</u> **Sawyer v. Whitley**, 505 U.S. 333, 338 (1992). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). What has been established is that a "fail[ure] to raise [a] claim despite recognizing it, does not constitute cause for a procedural default." **Murray**, 477 U.S. at 486.

To the extent Petitioner may argue that the alleged ineffectiveness of his attorney on direct appeal in failing to raise issues on direct appeal constitutes cause sufficient to avoid the

---

[4] In his postconviction appeal, Petitioner did pursue in his first point a contention that his trial attorney was ineffective in failing to object to the prosecutor's characterization of the crime as an "attempted murder." (Pet'r Br., Resp't Ex. H at 15, 27.) But an ineffective assistance of counsel claim is not a claim of trial court error, the type of error presented in Petitioner's second ground for relief in this federal habeas proceeding.

procedural bar for ground two and the procedurally barred part of ground one, that argument lacks merit because the claimed ineffective assistance of direct appeal counsel for failing to raise the prosecutor's alleged errors in striking Irons and in mentioning "attempted murder," or for failing to raise a claim that Petitioner's rights to compulsory process and to be free from cruel and unusual punishment were violated by the attorney's failure to raise a sufficiency of the evidence claim, was not presented to the state motion court as an independent claim. **Edwards v. Carpenter**, 529 U.S. 446 (2000); **Williams v. Kemna**, 311 F.3d 895, 897 (8th Cir. 2002). A claim of ineffective assistance of direct appeal counsel must be raised in a postconviction motion, Mo. S. Ct. R. 29.15(a), and then on postconviction appeal. See, e.g., **Osborne v. Purkett**, 411 F.3d 911, 919 (8th Cir. 2005). Petitioner did not pursue in his postconviction proceeding an ineffective assistance of counsel claim based on his arguments that the prosecutor improperly struck Irons or improperly argued about an attempted murder, so cause is not established by any failure of Petitioner's direct appeal counsel.

To the extent Petitioner may contend he established cause due to the failure of his postconviction motion counsel and his postconviction appellate counsel to pursue in Petitioner's postconviction proceeding any claim that his direct appeal attorney provided ineffective assistance in failing to raise the alleged errors by the prosecutor in striking Irons and in characterizing this crime as an attempted murder or the alleged error in failing to pursue a sufficiency of the evidence claim as a violation of Petitioner's rights to compulsory process or to be free from cruel and unusual punishment, the Court disagrees. The

- 15 -

"ineffective assistance of postconviction counsel is not a cause for procedural default." **Oglesby v. Bowersox**, 592 F.3d 922, 925-26 (8th Cir.), cert. denied, 131 S. Ct. 207 (2010); accord **Zeitvogel v. Delo**, 84 F.3d 276, 279 (8th Cir. 1996) ("[t]o establish cause, [the petitioner] must show something beyond the control of postconviction counsel, like State interference, actually prevented postconviction counsel from raising the claims and presenting the evidence in state court"). Therefore, any failure or conduct by Petitioner's postconviction motion and appeal counsel cannot establish cause for a failure properly to pursue a claim on direct appeal.

Because no cause has been established for Petitioner's procedural defaults, it is unnecessary to consider whether he has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

Petitioner's defaulted grounds may be reached absent a showing of cause and prejudice for his procedural default if he establishes that a failure to consider the defaulted claim's merits will result in a fundamental miscarriage of justice. "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne**, 411 F.3d at 920 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to

establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such evidence exists.

For the foregoing reasons, ground two is procedurally barred and will not be considered on the merits, and ground one, to the extent it alleges violations of Petitioner's rights to compulsory process and to be free from cruel and unusual punishment, is procedurally barred and will not be considered on its merits. The Court will consider the merits of the remaining part of ground one.

Merits - Standard of Review. Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only* "when the state court's decision [is] contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court [of the United States], or the [state court] decision [is] based on an unreasonable determination of the facts in light of the evidence presented in the state court." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009), cert. denied, 130 S. Ct. 2412 (2010); accord **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010). "A state court decision is contrary to clearly established federal law if it reaches a conclusion opposite to one reached by the [United States] Supreme Court on a question of law or decides the case differently than the [United States] Supreme Court has

decided a case with a materially indistinguishable set of facts." **de la Garza**, 574 F.3d at 1001; accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010). "A state court decision involves an unreasonable application of clearly established federal law if, in the federal court's independent judgment, the relevant state court decision not only applied clearly established federal law incorrectly, but also did so unreasonably." **de la Garza**, 574 F.3d at 1001. "The unreasonable application inquiry is an objective one." **Id.**; see **Losh**, 592 F.3d at 823 (under the unreasonable application clause of § 2254, a habeas petition may be granted "only if the state court applied the correct governing legal principle in an objectively unreasonable manner").

Importantly, "[o]nly rulings in Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on the point." **Losh**, 592 F.3d at 823 (citations omitted). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).

"[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." **Brown**, 371 F.3d at 462 . "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law precedential principles to the contrary." **Harrington v. Richter**, 131 S. Ct. 770, 784-85 (2011). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" **Id.** at 785.

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by both the state trial court and the state appellate court. **Smulls**, 535 F.3d at 864-65.

Ground One - Petitioner's Direct Appeal Attorney Provided Ineffective Assistance of Counsel in Failing to Raise a Sufficiency of the Evidence Challenge in Petitioner's Direct Appeal. Petitioner points to discrepancies in Moton's trial testimony as support for his claim that his attorney on direct appeal was ineffective in not raising on appeal an argument that there was insufficient testimony presented to support the conviction due to the doctrine of destructive contradictions. Specifically, Petitioner points to Moton's testimony that she was, at first, in the bedroom and could not see into the living room, where the shooting occurred; that she heard "tussling" before she went into the living room; that she remembered hearing

one gunshot before she entered the living room; that she did not see Petitioner fire the gunshot and did not know who did so; and that she was unclear whether or not she saw Chris, the other man in the living room besides Petitioner and Hamilton, after the shooting and stated Chris told her what happened during the time she was not in the living room. (Pet'r Reply at 1-4 [Doc. 13].)

Respondent urges that the decision of the Missouri Court of Appeals finding no error in the motion court's denial of this claim was not an incorrect or unreasonable application of Supreme Court precedent.

In affirming the motion court's denial of this claim, the Missouri Court stated

the motion court did not clearly err in finding that the testimony of Loraine Moton was consistent, precluding the application of the destructive contradictions rule. See . . . Beckett, 858 S.W.2d [at] 857 . . . (stating that the doctrine only applies where a witness's inconsistent and contradictory statements at trial are so diametrically opposed to one another as to preclude reliance thereon and rob the testimony of all probative force).

(Order, dated June 19, 2007, Resp't Ex. J, at 2.) In denying this claim, the motion court stated:

[Petitioner] claims appellate counsel was ineffective for failing to raise a sufficiency point based on the destructive contradiction[s] rule. The doctrine applies to contradictions in a witness' trial testimony, where the testimony is so internally inconsistent or contradictory that it has no probative value. State v. McCallum, 72 S.W.3d 287 (Mo. [Ct.] App. 2002). [Petitioner] claims that the destructive contradiction[s] rule applies because he believes the contradictions in Ms. Moton's testimony are rampant. [Petitioner]'s claim refer[]s specifically to the inconsistencies in Ms. Moton's testimony about whether [Petitioner] had a gun on the date of the incident, whether she could see a gun in [Petitioner]'s hand, or whether she merely assumed [Petitioner] was holding a gun.

On direct examination, Ms. Moton testified that when she entered the living room she saw Michael Hamilton, the victim, on his knees in front of [Petitioner] with his back to [Petitioner]. (TR. 187). She testified that she saw a gun in [Petitioner]'s hand, pointed down at Hamilton's head. (TR. 187). Ms. Moton testified that seconds prior to going into the living room she had heard two gun shots. (TR. 189). Ms. Moton described the gun as a medium to small handgun. (TR. 190).

On cross-examination, [Petitioner]'s attorney questioned Ms. Moton about seeing [Petitioner] on a prior occasion with a gun. (TR.196). Ms. Moton was not able to describe that gun or remember when exactly she had observed [Petitioner] with that gun. (TR. 196). [Petitioner]'s attorney asked Ms[.] Moton, "you can't even say that what you saw in [Petitioner]'s hand that night was in fact the gun that you saw before?" (TR. 197). She responded[,] "No, I can['][]t[] say that." (TR. 197). [Petitioner]'s attorney continued questioning Ms. Moton about her making an assumption that [Petitioner] had a gun because she saw an object in his hand and she heard gunshots. (TR. 197). [Petitioner]'s attorney asks Ms. Moton, "And once again, this is where you assume that you saw a gun?" (TR. 218). Ms Moton replies, "Right." (TR. 218). [Petitioner]'s attorney says, "Because you don't know whether or not it was a gun?" (TR. 218). Ms. Moton replied, "It was a gun." (TR. 218).

In addition to Ms. Moton, the State called the victim, Michael Hamilton, to testify at trial. Mr. Hamilton testified that he was asleep on the couch and awoke to a burning sensation in his side. (TR. 235). Mr. Hamilton said that he rolled over and looked up at [Petitioner] and asked [Petitioner] if he just shot [him]. (Tr. 235-238).

Mere discrepancies or conflicts in witness testimony are insufficient to invoke the doctrine of destructive contradictions. Inconsistencies in testimony affect weight of testimony and create questions for jury resolution. State v. Davison, 46 S.W.3rd. 68 (Mo. [Ct.] App. . . . 2001). Ms. Moton's testimony was consistent throughout, that she saw [Petitioner] with a gun in his hand standing above the victim with the gun pointed at the victim's head. [Petitioner]'s trial attorney tried to challenge Ms. Moton's credibility in cross-examination, but Moton maintained her testimony that it was a gun in [Petitioner]'s hand. Also, Michael Hamilton corroborated Moton's testimony by testifying that it was [Petitioner] standing above him after he had just been shot. Ms. Moton never contradicted her direct-examination testimony, but instead, was consistent throughout her entire testimony, that [Petitioner] had a

- 21 -

gun. There was substantial credible evidence presented for the jury to draw a reasonable inference, and to conclude beyond a reasonable doubt, that [Petitioner] shot the victim.

Appellate counsel's failure to raise a sufficiency point based on the destructive contradiction[s] rule was not ineffective [assistance of counsel], [Petitioner]'s point is denied.

(Judgment, Resp't Ex. G, at 38-39.)

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal. See **Evitts v. Lucey**, 469 U.S. 387, 396-97 (1985); **Douglas v. California**, 372 U.S. 353, 357-58 (1963). The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in **Strickland v. Washington**, 466 U.S. 668 (1984). **Smith v. Robbins**, 528 U.S. 259, 285 (2000); **Boliek v. Bowersox**, 96 F.3d 1070, 1073 (8th Cir. 1996). Petitioner must show that the appellate attorney's performance was below the reasonable standard of competence and that there is a reasonable probability that the result would have been different absent this deficient performance. See **Strickland**, 466 U.S. at 687; **Gee v. Groose**, 110 F.3d 1346, 1352 (8th Cir. 1997).

Appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers. See **Jones v. Barnes**, 463 U.S. 745, 751-52 (1983); **Gee**, 110 F.3d at 1352; **Reese v. Delo**, 94 F.3d 1177, 1185 (8th Cir. 1996) (counsel has discretion to abandon losing issues on appeal); **Pollard v. Delo**, 28 F.3d 887, 889 (8th Cir. 1994). An attorney's decision not to raise an unwinnable issue on appeal is an important

strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of appellate counsel. **Horne v. Trickey**, 895 F.2d 497, 500 (8th Cir. 1990); <u>see</u> **Jones**, 463 U.S. at 751-54 (attorney on direct appeal does not have duty to pursue on appeal every colorable issue); **Grubbs v. Delo**, 948 F.2d 1459, 1466-67 (8th Cir. 1991) (finding no merit to the petitioner's argument that his confession was inadmissible and, therefore, the petitioner's direct appeal counsel "could not have been ineffective for failing to argue the issue"); **Thompson v. Jones**, 870 F.2d 432, 434-35 (8th Cir. 1988) (the petitioner's double jeopardy claim was without merit, so there was no prejudice and the "petitioner [wa]s not entitled to any [federal habeas] relief on the grounds of ineffective assistance of counsel" on appeal).

Here, Petitioner asserts his appellate attorney was ineffective in failing to raise a sufficiency of the evidence claim on direct appeal, based on the destructive contradictions doctrine. The state courts determined that the destructive contradictions doctrine did not apply to this case and that Petitioner's appellate counsel did not provide ineffective assistance.

The state courts' factual determinations are presumed correct because they are supported by the record and Petitioner has not rebutted those determinations by clear and convincing evidence. To the extent Petitioner is now presenting evidence regarding what happened before Moton went into the living room, such evidence does not rebut the state courts' findings regarding what she saw once she was in the living room and how she described what she saw. The portions of Moton's cross-examination regarding whether or not

Moton saw Petitioner fire the gun that Petitioner now presents in support of ground one fall within, but do not rebut, the motion court's findings that discrepancies in Moton's testimony were for the jury to resolve and did not constitute destructive contradictions. Additionally, this federal habeas court cannot re-examine the state court's interpretation and application of the destructive contradictions doctrine to Petitioner's case.

The state courts having concluded there was no basis for a destructive contradictions challenge to the sufficiency of the evidence on direct appeal, and the record supporting that conclusion, Petitioner has no claim for the ineffective assistance of his counsel on direct appeal.

The state courts' decisions do not constitute an incorrect or unreasonable application of clearly established federal law, nor were those decisions based on an unreasonable determination of the facts.

## Conclusion

After careful consideration, the Court finds that one of Petitioner's grounds for relief is procedurally barred, and the remaining ground is without merit. Accordingly,

**IT IS HEREBY ORDERED** that Jeff Norman is **SUBSTITUTED** for Troy Steele as the Respondent in this case.

**IT IS FURTHER ORDERED** that Petitioner's motion for appointment of counsel [Doc. 17] is **DENIED** as moot.

**IT IS FINALLY ORDERED** that the 28 U.S.C. § 2254 petition of Kevin Howard be **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.

      /s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this <u>17th</u> day of <u>March</u>, 2011.